OPINION OF THE COURT
Vincent R. Balletta, J.
A hearing was held in Special Term, Part II, of this court on January 6,1983 pursuant to an order of Justice Albert A. Oppido to determine whether a special district election should be set aside as null and void. It should be noted that Justice Oppido provided that: “Pending the hearing and determination, the respondent, edward c. dimonda may assume the office of Fire Commissioner, however, such assumption of office shall be without prejudice to any and all relief petitioner now seeks.”
*831 On December 14,1982, an election was held in the West Hempstead Fire District for the position of fire commissioner for a five-year term commencing January 1, 1983. Edward C. DiMonda was the incumbent commissioner running for re-election. Eleven days prior to the election, the petitioner, Richard A. Gander, completed the necessary filing to oppose Commissioner DiMonda. A total of 737 votes were cast, 374 of which were for DiMonda, and 363 for Gander, making DiMonda the winner by 11 votes.
Petitioner claims that 92 voters were not registered to vote. Although the respondent questions the accuracy of that number, he apparently acknowledges that some 85 voters were not registered. Proof was submitted from the Board of Elections of Nassau County indicating that the records of that board confirm the position of the petitioner that 92 voters were not registered.
It is conceded by the respondent that by virtue of an amendment to the Town Law which took effect in 1980, a voter must be registered. He claims, however, that the procedures which were set up by the board of fire commissioners were reasonable and proper, and further, that the petitioner consented to those procedures and that under any circumstances, his failure to challenge the voters at the time they cast their ballots acted as a waiver of the defect and that petitioner should be estopped from now claiming that 92 voters were not qualified to cast their ballots in the election.
The board of fire commissioners is charged with the responsibility of conducting an election for fire commissioner pursuant to the terms and provisions of the appropriate statutes. Section 175 of the Town Law is controlling with respect to the election of fire district officials. Subdivision 1 provides in part as follows: “The board of fire commissioners shall designate a resident fire district elector, who shall be ,a registered voter of the town, to act as chairman of any election of said district and shall designate not less than two nor more than four resident fire district electors, who shall be registered voters of the town to act as election inspectors and ballot clerks at such elections.”
*832 Subdivision 2 provides in pertinent part as follows: “Every elector of the town who shall be a registered voter of the town and who shall have resided in the district for the period of thirty days next preceding any election of fire district officers shall be qualified to vote for such officers.”
The conduct of the election must necessarily be in conformé with the applicable statutes. It is conceded that no one verified whether those individuals who presented themselves to vote were registered. The following procedure was established: When a voter appeared to cast his ballot, he was given the following form to complete:
“Date of Election: December 14, 1982
“I, the undersigned, do hereby certify that I am a citizen of the United States, 18 years or more of age, and reside within the West Hempstead Fire District, New York for the past thirty (30) days or more, and as such, am a duly qualified voter entitled to vote in the election conducted by The West Hempstead Fire District, Town of Hempstead on December 14,1982 for the purpose of electing one Commissioner for a term of five (5) years, that I have not voted in this election at any other time, and that this is my first and only ballot. I understand that this statement will be accepted for all purposes equivalent to an affidavit and if it contains a material false statement, shall subject me to the same penalties as if I had been duly sworn.
“Signature ......................................
“Street Address ..................................
“Town ..........................................
“Dated: December 14, 1982”
It should be noted that the certificate completed by prospective voters while using the term “duly qualified voter”, does not contain a statement that the prospective voter is a registered voter, and further, the statement of qualification by the voter appears to rest on the 30-day residence of the voter in the district.
That form was then given to an election inspector and thereafter placed in a box. Registration books were available at the table at which the inspector sat, but the form *833 presented by the voter was not checked against the registration books or any other lists to verify that the individual was properly qualified to cast a ballot. The information given on the form was taken at its face value. A form was also available in the event a voter was challenged. The procedure adopted provided that in the event there was a challenge to the voter, then the inspector would check the available election books, but if a challenge was not made, no such verification would be required. There were no challenges during the election, except that some time after 9:00 p.m., the petitioner did ask about one individual who voted, approximately simultaneously with that voter being in the voter’s booth. It does not appear that an actual challenge form was completed. It was discovered that the individual was not registered to vote within the fire district and was therefore not eligible to vote but this was not determined until after the vote was cast.
Prior to the election, on December 7,1982, pursuant to a request from petitioner, a meeting was held at which respondent was present, together with the secretary of the fire commission. The petitioner apparently was not certain as to whether registration was a requirement for voters. At that meeting he was told by the secretary of the fire commission that registration was required and he was invited to read the appropriate statutes and regulations. The petitioner denies that there was any discussion concerning the method of determining whether prospective voters were registered or the procedures which had been set up by the fire commission. The respondent, however, testified that after the secretary of the fire commission explained the registration requirement, he told the petitioner what procedures would be followed and indicated that the registration of a potential voter would only be checked if there was a challenge. The petitioner thereafter said, “O.K.”, and apparently left the meeting. The respondent suggests to this court that an agreement was reached at the December 7 meeting as between the candidates which established the procedures to be used; the respondent interpreted the “O.K.” as a consent to the outlined procedure.
*834 An additional meeting was held approximately one-half hour before the election commenced, at which time the election inspectors were instructed as to the procedures to be followed. Respondent was present; petitioner was never notified nor informed of that meeting. The respondent takes the position that petitioner’s brother was in the room and heard the instructions given to the inspectors and that his silence was a consent given on behalf of his brother, the candidate, to the directions given to the inspectors. There is, however, no testimony which would indicate that petitioner’s brother was either a “watcher” or represented or acted on behalf of the candidate.
Petitioner’s brother was present during most of the evening but petitioner did not arrive at the polling place until approximately 640 votes had been cast.
Although the fire commissioners suggest that the method developed was fair and reasonable, this court would observe that in order for a candidate or someone acting on his behalf to assure that only registered voters cast a ballot, it would be necessary to challenge almost every voter, since it would be difficult or impossible to know whether those people presenting themselves at the polls were registered without first checking records. Indeed, there are many procedures which could be established to determine whether the potential voter was actually registered, but in this case the procedures established required the candidate or his representative to have some kind of magical knowledge as to whether those people who came to vote were qualified or not.
The respondents rely on several principles to sustain their view that this court should not void the election, as follows: (1) substantial compliance as an equitable argument; (2) waiver; and (3) public policy.
The “substantial compliance” argument is without merit. It is not necessary for the Legislature to designate a procedure to determine whether or not a prospective voter is registered. It cannot be said that there is a substantial compliance with the registration requirement if a valid procedure has not been established to determine whether a voter is truly registered and thereby qualified to cast a *835 ballot. In this particular election, the voter was not even required to state that he was registered with the board of elections, but rather was left to his own devices to determine whether or not he was a “qualified voter”. Subdivision 2 of section 175 of the Town Law was amended in 1980 (L 1980, ch 901, § 1) to clarify the law as it then existed. Although there was no specific statutory requirement for registration prior thereto, a Federal District Court in Tatay v Tatay (349 F Supp 1300) determined that registration was required. In addition, in 1970, the New York State Attorney-General rendered an opinion to the same effect.
Since the registration procedure had not been used regularly in many special district elections, the Legislature in its wisdom amended subdivision 2 of section 175 of the Town Law to eliminate what had been a widespread procedure in the past.
The method used in this election cannot by any stretch of the imagination be considered as a reasonable means of determining voter qualification. As a matter of fact, it would be unreasonable to expect a candidate or his representatives to know whether individuals are registered so that an appropriate challenge could be made. It is obvious that the only way a candidate could assure that only registered voters could cast ballots would be to challenge each and every voter.
As previously indicated, there are many methods that could be devised to determine registration. Voter registration books could be used, or cards could be alphabetically compiled from those voter registration lists so that election inspectors could quickly check the registration qualification of each voter.
In order to substantially comply with the intent of the statute, it would be necessary for the fire district to devise a method wherein those charged with conducting the election could determine for themselves whether a prospective voter was indeed qualified by reason of voter registration. This was not done.
The argument of waiver is equally flawed. The registration requirement is not for the benefit of the individuals running for office but rather is a protection for the resi *836 dents of the district, and no agreement as between the parties could be a waiver of the statutory requirements, nor could the failure of a candidate or his designated representative, if there is one, to challenge be effective as against the rights of the residents.
The third argument directs itself to public policy. It is suggested that a court should exercise its power to void an election only if it be convinced that the result of the election would have been different but for the improper votes. This court cannot say that in this election the result would not be different. Indeed, only 11 votes separated the winner and the loser, while 92 voters were not qualified to cast their ballots. The public policy to be most concerned with is the legislative requirement that only registered voters make decisions concerning their elected representatives and that the candidates themselves cannot waive, by agreement or otherwise, such a stringent requirement.
It is clear that the failure of election officials to assure by appropriate means that prospective voters are registered is a violation of section 175 of the Town Law. (Filiberto v Roosevelt Fire Dist., 75 AD2d 572; Leggio v Brentwood Fire Dist., Supreme Ct, Suffolk County, Stark, J.; DiNicola v West Islip Fire Dist., Supreme Ct, Suffolk County, Stark, J.)
The obligation of election officials to ascertain the eligibility of voters is inviolate and their failure to do so is a breach of their obligation and requires this election to be set aside as null and void.
The respondent board of fire commissioners is directed to conduct a new election no earlier than 20 days and no later than 40 days from the date hereof. Notice of said election shall be published as set forth in section 175 of the Town Law. Respondent DiMonda may, however, continue to act as a commissioner until said election.